No. 47,214

JESSE JENNINGS and IRENE LEWIS, *et al.*, *Appellees*, v. RICHARD F. WALSH, HUGH P. DOHERTY, PATRICK HANLON, and THE CITY OF KANSAS CITY, KANSAS, *Appellants*.

(521 P. 2d 311)

Opinion filed April 6, 1974.

*A. B. Howard*, Assistant City Attorney, argued the cause, and *Donald E. Martin*, City Attorney, was with him on the brief for the appellants.

*Richard C. Wallace*, of Kansas City, Staff Counsel for Wyandotte County Legal Aid Society, argued the cause, and *Thomas DeCoursey*, of Kansas City, General Counsel for Wyandotte County Legal Aid Society, was with him on the brief for the appellees.

The opinion of the court was delivered by

KAUL, J.: This class action was instituted by plaintiffs-appellees and other persons similarly situated as homeowners or occupants of homes in a residential classification that are not connected to the sewer system of Kansas City, Kansas, but are being assessed a sewer service fee of $1.80 per month. The plaintiffs' class numbers approximately 11,200 homeowners. The relief sought was a declaratory judgment and permanent injunction. The defendants-appellants are the City of Kansas City, Kansas, and the individual City Commissioners. In response to plaintiffs' petition, defendants answered alleging the charges in question were authorized by either K. S. A. 12-3101, *et seq.* or K. S. A. 12-631g.

The case was submitted to the trial court on an agreed statement of facts. Following an adverse judgment the defendants perfected this appeal.

The sewer charge in question is assessed under City Ordinance Sec. 32.20 which reads:

"Subject to the provisions of this article, no person shall discharge untreated sewage in the city, or into a sewer system discharging sewage in the sewer

system of the city, or discharge sewage in the city or *use private septic or disposal tanks in the city without paying the sewer service charges set out in this article.*"

It is admitted that the homes of plaintiffs are not connected with the city system, but all use septic tanks, 90 percent of which are cleaned at least once every three years by private contractors who most generally discharge the sewage from their trucks into the city's system.

It appears the city first claimed authority for its ordinance under provisions of the Kansas Water Pollution Act (K. S. A. 12-3101, *et seq.*), and later in the alternative, also asserted authorization for the ordinance under 12-631g.

We shall first consider defendants' contention with respect to 12-631g which was enacted in 1953. It reads:

"The governing body of any city or any township sewer district which has installed or may hereafter install a system of sewage disposal may, by ordinance of such city or by the resolution of the governing body of such township sewer district, establish just and equitable rates of service charges to be paid to such city, or to such township sewer district, for the use of such sewage disposal system by all persons, firms, corporations, city departments, the United States, the state of Kansas and its political subdivisions, and any organizations whose *premises are connected or may hereafter be connected* to the sanitary sewer system of such city or of such township sewer district: *Provided,* That the provisions of this act shall not apply to any city of the first class having a population of more than two hundred thousand (200,000)." (Emphasis supplied.)

Defendant's latch on to the phrase "or may hereafter be connected" in support of their position. The city says it has plans to set up "no protest" districts to provide sewer service to many of the affected class by 1975 and, thus, they will be hereafter connected. However, no plans were described or submitted into evidence. We believe the clear import of the language of 12-631g is to authorize a resolution by the governing body concerned to levy a service charge for the *use* of the disposal system by anyone whose premises are presently connected or for the use by anyone when hereafter connected. To adopt the construction urged by defendants would be to destroy the relationship between use and charges therefor which is manifestly intended by the language employed in the statute. The charge is to be levied against those who use and are connected to the system.

The Water Pollution Act (K. S. A. 12-3101, *et seq.*) was enacted in 1959. Its purpose was to provide for the abatement of water pollution by municipalities. The various sections of the act extend

to municipalities authorization for the developing, constructing and maintaining of sewer systems and provide for the financing thereof by sewer service charges and the issuance of revenue bonds. The portion of act relating to the issue herein is 12-3104 which reads in pertinent part:

"(a) To adopt by ordinance or resolution sewer service charges based on a *per unit volume of water used* and based on the *strength and volume* of sewage contributed." (Emphasis supplied.)

Here, as in 12-631g, the relationship of use to the authority to levy a charge is clearly evidenced by the language employed. The levying of a service charge is authorized if based on a per unit volume of water "used" and on the strength and volume of sewage contributed. Plaintiffs contribute no sewage to be measured by strength and volume. No language appears in either of the two statutes which indicates that a charge for indirect use of the system is contemplated. If the private contractors who clean plaintiffs' septic tanks discharge the sewage into the city system they, of course, would be contributing, but no issue is presented in this regard. The relationship between use and charges therefor appears to run through the various statutes (K. S. A. and K. S. A. 1973 Supp. 12-630, *et seq.*) pertaining to sewage and drainage as well as the water pollution act. For example, 12-631c which pertains to the levying of sewer service charges where a city has acquired a system by gift or purchase, authorizes the levying of equitable service charges for the "use" of such sewer system based upon the quantity and character of the sewage discharged. Also K. S. A. 1973 Supp. 12-1674a, enacted in 1973, while not relevant here expressly prohibits cities in certain counties from imposing sewer service charges upon persons not receiving sewer service. (See, also, K. S. A. 1973 Supp. 12-631m.)

In support of their position defendants refer to a decision of the Court of Common Pleas of Allen County, Ohio in the case of *Wiford v. Village of Elida,* 179 N. E. 2d 559, wherein a village ordinance imposing a charge on land which discharged sewage into the village system was upheld. The facts are dissimilar in several respects from those present in the instant case. The evidence disclosed that, at the time installed, septic tanks in the village of Elida were not required to have leech beds or filter beds and that the overflow therefrom entered the drains and pipes of the village system. In the opinion the court specifically noted that the septic

tank of the Elida Public School was without a filter or leech bed and that the outlet thereof was controlled only by a baffle board; and that the outflow of the tank was discharged into the village system. It was pointed out that the school septic tank was built to accommodate a student population of 600, whereas the school population now numbers approximately 1600.

In a later case, *Giesel v. Broadview Hts.*, 14 Ohio Misc. 70, 236 N. E. 2d 222, the Common Pleas Court of Cuyahoga County, Ohio noted the distinguishing features of the *Village of Elida* case and adhered to what was denominated the general rule that the key to a valid sewer rental charge is "use" of the system. An attempt by the City of Broadview Heights to collect a sewer rental charge before the premises in question were served by the system was held to be in contravention of Section 729.49, Ohio Revised Code, the thrust of which is similar to Kansas statutes previously mentioned. Generally speaking, sewer charges by a municipality must be tied to the use of the services and the fee imposed, under most authorities is not a tax, but a charge for services rendered. (64 C. J. S., Municipal Corporations, § 1805, pp. 265, 273.) In 11 McQuillin [3rd Ed. Revised], Municipal Corporations, Sewers and Drains, § 31.30a, p. 248, the rule is stated in this fashion:

"Sewer charges and fees are not taxes or special assessments . . . but are in the nature of tolls or rents paid for services furnished or available. . . ."

Finally, defendants suggest authority for the ordinance in question under the Home Rule power evolving from Article 12, Section 5, of the Kansas Constitution. Plaintiffs point out that the matter of Home Rule authority was not raised in the court below and, thus, cannot be advanced for the first time on appeal. Nevertheless, we would note that Home Rule power of cities is not absolute, but subject to the power of the legislature in certain areas—exclusively in some, optionally in others as expressly set forth in the amendment. (*Claflin v. Walsh*, 212 Kan. 1, 509 P. 2d 1130.) With respect to the instant case, as has already been pointed out, the legislature has exercised its option in the area of water pollution and specifically in the area of sewer service fees by enacting statutes relating thereto and applicable to all cities of the same class.

We find no authorization under either K. S. A. 12-631g or K. S. A. 12-3104 for the ordinance imposing sewer service charges on homeowners or occupants who are not connected to the city sewer system.

The judgment is affirmed.